Craver v. McPherson.

---

BESSIE CRAVER ET AL., APPELLANTS, V. THOMAS B. McPHERSON, APPELLEE.

FILED JUNE 27, 1923. No. 22911.

Appeal: EXCLUSION OF EVIDENCE. When on the trial of a cause to a jury the court erroneously excludes competent evidence and then directs a verdict against the party making the offer because the issue to which the excluded evidence relates is not satisfactorily proved, the judgment will be reversed on appeal.

APPEAL from the district court for Douglas county: JAMES M. FITZGERALD, JUDGE. *Reversed.*

*Morsman, Maxwell & Haggart,* for appellants.

*Baker & Reddy* and *Byron G. Burbank,* contra.

Heard before MORRISSEY, C. J., LETTON, DEAN and DAY, JJ., BUTTON, District Judge.

MORRISSEY, C. J.

This is the second appeal in this case, our first opinion being found in 106 Neb. 568. The action is based upon a promissory note given by defendant to Kate McGinness, together with a contemporaneous memorandum signed by the payee of the note. On the former appeal the only question presented was the sufficiency of the petition to state a cause of action. A demurrer had been filed to the petition and sustained by the trial court, but on review this court held the petition sufficient and remanded the cause for a new trial. Before the institution of the suit the payee had died, her estate was duly administered, and this suit is brought by the residuary legatees under her will. A copy of the note and memorandum are set out in the former opinion, but for convenience they will be set out here. They read as follows:

"$37,000. Omaha, Neb., November 27, 1908.

"One year after date, for value received I promise to pay to the order of Mrs. Kate McGinness, at the Union Stock Yards National Bank, South Omaha, Nebraska, thirty-seven thousand dollars, with interest at the rate of 6 per cent. per annum from date until paid.

"Thomas B. McPherson."

"Omaha, Nebraska, November 27, 1908.

"Whereas, Thos. B. McPherson has acted as agent for many years for my late husband, Daniel McGinness, and after his death for me, in the loaning of certain money for us and in our behalf;

"Whereas, he is now holding for me notes as hereinafter described;

"Whereas, he has executed his own note of even date herewith for thirty-seven thousand dollars ($37,000) payable to me, pledging as collateral the notes above referred to, to wit:

"Walker Manufacturing Co., $18,171.98 and int. due Nov. 14th, 1909.

"A. A. Spaugh, $9,386.16 and int. due Dec. 7th, 1909.

"Prime and Tower, $12,000 and int. due Jan. 26th, 1912.

"Whereas, the note for thirty-seven thousand dollars is really not his personal obligation and is only given to protect me from loss upon the notes he has taken for my account:

"Now, therefore, in consideration of the premises, I hereby agree to hold his note for thirty-seven thousand dollars, and not to transfer or dispose of it without his consent in writing.

"I further agree that the collateral notes referred to shall be held by him; and he is hereby empowered to collect, renew or extend them, and to substitute for them other collateral at his discretion.

"I also agree to exhaust my collateral, whatever it may be, before demanding payment from him of any part of this obligation, or attempting to collect any part of his personal note, unless there should be a loss in the collateral referred to, in which case he shall be liable for such deficiency.

"Provided, however, that he shall pay me, annually, interest at the rate of six per cent. upon the whole or such part of the principal as may be unpaid from time to time.

"Witness my hand day and date first above written.
                    "(Signed)        Kate McGinness."

Defendant filed an amended answer which admitted that he signed the note, but denied the delivery to the payee. He admitted that the payee signed her name to the memorandum, but denied that he accepted the same or that it constituted any liability against him. He alleged that in 1896 Daniel McGinness, the husband of the payee of the note, placed in defendant's hands $37,000, with instructions to defendant to loan the same in his own name, but for the use and benefit of him, Daniel McGinness; that for many years thereafter and until the death of McGinness in 1907 defendant continued to loan the money for McGinness and took notes in the name of defendant as payee; that the interest received upon the loans was paid to Mc-

Ginness during his lifetime and that the defendant received no compensation for his services; that after the death of Daniel McGinness, the payee of the note in suit, his widow Kate McGinness, claimed ownership of the $37,000, and defendant at her request continued to loan the same as he had theretofore done for her husband, and that he received no compensation from her for his services; that in loaning the money defendant took the notes in his own name with the knowledge and approval of the owner of the money, and that defendant frequently made loans in excess of $37,000 and the excess over that amount was the money of defendant; that at no time prior to the death of Daniel McGinness had he ever claimed that defendant was indebted to him for any portion of the $37,000; that on November 27, 1908, defendant had loaned the $37,000 before mentioned, together with some of his own money, as follows:

Walker Manufacturing Company...$18,171.98
A. A. Spaugh.................... 9,386.16
Prime and Tower............... 12,000.00
                                ----------
                                $39,558.14

The answer in some detail recites that the money had theretofore been loaned to another party, and sets out excerpts from correspondence between defendant and Kate McGinness, and alleges that on November 27, 1908, he sent Kate McGinness the note now in suit together with a letter in which he said:

"I will send you my note to show in case of my death just what collateral is yours and when and as it is changed (I mean the collateral) your envelope in safe will always contain your stuff. Now my note means nothing more than a memorandum for you to hold. The real paper on which you must depend is the collateral and I will try my best, as I always have, to get good paper for you. Of course, I will advance you the interest if necessary so you can depend upon it the day

'tis due.  I will send you for my protection a statement
for you to sign and return."

The "statement" mentioned in defendant's letter was
in the words and figures in the memorandum heretofore
set out, except that it did not contain either of the last
two paragraphs thereof.  The record discloses that Mrs.
McGinness did not sign or execute the memorandum
which defendant mailed to her, but that she had the
same rewritten with the two concluding paragraphs added
thereto, and in due course of mail sent the same to
defendant, who retained it.  The answer alleged that on
January 19, 1909, defendant held the note of one W. J.
McLaughlin for $25,000 and the note of Prime and
Tower for $12,000, and that on that date he wrote Mrs.
McGinness and said:

"I enclose copy of note of W. J. McLaughlin, which
I substitute for the Walker and Spaugh paper, I held
for you.  McLaughlin makes a property statement show-
ing over $300,000 assets and no liabilities.  This note
with that of Prime and Tower covers the exact amount
of your investment."

And it is alleged that on the 24th of the same month
Mrs. McGinness wrote defendant acknowledging receipt
of the McLaughlin note.  It is next alleged that the
correspondence heretofore mentioned and the $37,000 note
in suit·and the memorandum which defendant sent with
the same were all parts of one transaction, which were
rejected by Mrs. McGinness, and that defendant never
received any consideration from any person for becoming
liable on the note in suit nor did Mrs. McGinness suffer
any loss or lose any rights against the makers of the
notes by reason of any act of defendant, and that she
knew at all times that the note in suit was intended to
be a memorandum only and not a personal obligation
of defendant; that the Prime and Tower note was paid
to the administrator of the estate of the payee of the
note in suit; and that the McLaughlin note was sub-
stituted for the other two notes with the consent of Mrs.

McGinness. The answer, which is so long it cannot be set out in detail, alleges also that the administrator of the estate of Kate McGinness undertook to collect the amount due on the McLaughlin note, and did realize $1,000 from the sale of some collateral given to secure the payment of the same, and that in his own name he secured judgment against McLaughlin.

In this connection it may be said that the judgment against McLaughlin is not collectible. As a further defense it is alleged that the statute of limitations has run against the note. In support of this allegation it is specifically alleged that on January 4, 1911, and at other times during the years of 1911 and 1912 the administrator of the estate of Kate McGinness, deceased, made demands upon defendant to pay the balance due upon the note in suit; that the demands were refused and defendant denied all liability upon the note; that the note became due November 27, 1909; that the last money paid on account of the original indebtedness was paid January 22, 1912, being the amount of the Prime and Tower note; that more than five years had elapsed since the demands by the administrator and more than five years had elapsed since the payment of the $12,000 and the bringing of the suit on February 2, 1918.

Plaintiffs filed a reply denying generally the affirmative allegations contained in the answer, but admitted that on January 19, 1909, defendant held for Kate McGinness the notes of the Walker Manufacturing Company, A. A. Spaugh, and Prime and Tower, and that on or about that date defendant substituted for the notes of Walker Manufacturing Company and A. A. Spaugh the note of McLaughlin for $25,000, which defendant then held and which was his personal property. The reply alleged also that the substitution was made under the authority conferred upon defendant by the memorandum signed by Kate McGinness which is heretofore set out; that the memorandum was then in possession of defendant and had been accepted by him, and that by reason of its

acceptance defendant was permitted to retain possession and control of the notes of the Walker Manufacturing Company, A. A. Spaugh, and Prime and Tower, and was permitted to substitute the note of McLaughlin for the notes of Walker Manufacturing Company and A. A. Spaugh, and that defendant is barred and estopped from asserting that he did not accept the memorandum.

Evidence in respect to the issues presented was submitted, and at its conclusion the court directed a verdict in favor of defendant and against the plaintiffs. The plaintiffs have appealed.

One hundred and twenty-four assignments of error are set out in the brief, but as most of these assignments relate to the ruling of the court on the admission or exclusion of evidence we do not deem it essential to a disposition of the case to take them up seriatim.

Many rulings on the evidence might have been erroneously prejudicial had the cause been submitted to the jury. But as the court, for reasons not based upon the objectionable evidence admitted or upon the whole record before the court, but for the reason stated by the court in its instructions to the jury, directed a verdict, we think this appeal may be disposed of by a consideration of the reason assigned by the court for its direction. The court stated:

"The agreement here entered into is that, at most, if the plaintiffs exhaust their remedy against McLaughlin, then the defendant would be liable; and the transcript of the record of the judgment that was obtained out in Fremont county, Wyoming, against McLaughlin, I cannot admit here as the transcript of the record of the suit on this case, for the reason that there is nothing reciting what it is on, excepting it claims that it is on a note. But the transcript indicates that the suit is by the representatives and heirs of the deceased, Kate McGinness; whereas this note runs to McPherson; and judgment for $37,000 on a $25,000 note, it seems, is too far-fetched to allow any dispute on that. If I submitted

it to you, I am satisfied you would take the same view of it."

In defendant's amended answer he specifically alleged that the administrator of the estate of Kate McGinness "undertook the collection and enforcement of the note of W. J. McLaughlin for $25,000 and proceeded * * * in his own behalf to secure judgment against him." And defendant's counsel in his opening statement to the jury stated that the administrator had recovered a judgment against McLaughlin on this note. Plaintiffs' offer of a duly authenticated transcript of an execution issued on the judgment, with the return of the sheriff thereon, was likewise excluded by the trial court. The correspondence in evidence shows to almost a moral certainty that the judgment, a transcript of which was offered, was based upon the McLaughlin note. These transcripts were offered for the purpose of showing that the preliminary steps required to be taken under the memorandum pleaded had been taken; that neither the note nor judgment had been paid and the contingent liability against defendant had accrued, and it was error for the court to exclude them. 22 C. J. 816, sec. 930.

The statute of limitations was in issue under the pleadings and proof, and it is contended by appellant that on this issue alone the judgment may be sustained. We do not so construe the evidence.

From a consideration of the entire record, the conclusion is irresistible that plaintiffs were entitled to have the transcript admitted in evidence and to have their cause submitted to the jury under proper instructions, and it was therefore error for the court to direct a verdict for defendant.

The judgment is reversed and the cause remanded for further proceedings.

REVERSED.